```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND

GENE ERNY, derivatively on
  behalf of India Globalization :
  Capital, Inc.
                                 :

     v.                          :   Civil Action No. DKC 18-3698

                                 :

RAM MUKUNDA, et al.
                                 :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this shareholder derivative case is Plaintiff's motion for final approval of derivative settlement, fee award, and service award. (ECF No. 34). A hearing was held, via zoomgov, on June 30, 2020. For the following reasons, the motion will be granted and the settlement, fee award, and service award will be approved.

**I.   Background**

The procedural and factual history of this case is detailed in the court's memorandum opinion of May 1 and will not be repeated here. Likewise, "[t]he Court has already provided detailed summaries of the proposed settlements in the litigation . . . and will presume familiarity with the terms of the proposed settlements." *In re Mid-Atl. Toyota Antitrust Litig.*, 605 F. Supp. 440, 442 (D. Md. 1984) (internal citations omitted). In the court's May 1 opinion and subsequent order, (ECF Nos. 32, 33) the court preliminarily approved the parties' derivative settlement,

ordered that Plaintiffs publish notice of that approval, and set a Final Approval Hearing for June 30. (*Id*.). Plaintiffs issued notice and the hearing has since been held. At no point in that process have any objections to the Settlement been lodged with this court. Following the Final Approval Hearing, Plaintiffs filed a Supplemental Brief in Support of Fee Award. (ECF No. 39).

**II. Analysis**

Federal Rule of Civil Procedure 23.1 provides that a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed.R.Civ.P. 23.1(c). There are, as stated before, two stages. At the *preliminary* approval stage, the court's role was to determine whether there existed "'probable cause' to submit the proposal to members of the class and to hold a full-scale hearing on its fairness." *In re Am. Capital S'holder Derivative Litig.*, No. CIV. 11-2424 PJM, 2013 WL 3322294, at *3 (D. Md. June 28, 2013) (citing *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1383 (D. Md. 1983). The "essential inquiry" at the preliminary stage was "whether the proposed settlement is fair, adequate, and reasonable." *In re Mid-Atlantic Toyota*, 564 F.Supp. at 1383 (citing, e.g., *In Re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 207 (5th Cir. 1981); *In Re Beef Industry Antitrust*

2

*Litigation*, 607 F.2d 167, 179-80 (5th Cir. 1979); *In Re Montgomery County Real Estate Antitrust Litigation*, 83 F.R.D. 305 (D. Md. 1979); Manual for Complex Litigation § 1.46 at 56-57 (5th Ed. 1982)). Critically, though:

> the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable, and adequate . . . it is simply a determination that there is, in effect, "probable cause" to submit the proposal to members of the class and to hold a full-scale hearing on its fairness, at which all interested parties will have an opportunity to be heard and after which a formal finding on the fairness of the proposal will be made.

*In re Mid-Atl. Toyota*, 564 F.Supp. at 1384 (quoting Manual for Complex Litigation § 1.46 at 62, 64-65 (5th Ed.1982)).

Nevertheless, the standard, and the factors to be considered, at the final approval stage are exactly the same. *See, e.g.*, *In re Mid-Atl. Toyota Antitrust Litig.*, 605 F.Supp. 440, 442 (D. Md. 1984) ("The standard for determining whether a proposed settlement should be [finally] approved, is whether the settlement is fair, reasonable and adequate") (internal citations and quotations omitted). Therefore, the court is guided by exactly the same analysis which underlay its May 1 opinion. Indeed, much of the cited authority in that opinion drew from *final* approval precedents. *See, e.g.*, *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F.Supp.3d 277 (S.D.N.Y. 2015).

**A.  Fairness**

As discussed in the court's previous opinion, fairness analysis requires the court to determine:

> that the settlement was reached as a result of good-faith bargaining at arm's length, without collusion, on the basis of (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class action litigation.

*In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991) (citing *In re Montgomery County Real Estate Antitrust Litigation*, 83 F.R.D. 305 (D.Md. 1979)).

The court remains satisfied that the parties bargained at arm's-length and without collusion.  Since the court's preliminary fairness ruling, no new information has come to light which would undercut the court's previous findings that 1) the early stage of the litigation and relative lack of discovery "is offset by other factors," namely the breadth and depth of corporate governance reforms, 2) that the aid of "extensive formal mediation" is a "hallmark[] of a non-collusive, arm's-length settlement process," and 3) that the extensive and relevant experience of counsel in this case supports the case for a finding of fairness.  *In re India Globalization Capital, Inc., Derivative Litig.*, No. DKC 18-3698, 2020 WL 2097641, at *3-4 (D. Md. May 1, 2020).

In fact, there are two circumstances which have bolstered the case for determining that the settlement is fair.  The first is the Declaration of Timothy Brown, which notes:

> Although the Parties were able to reach an agreement at a relatively early stage in the litigation, the Parties were well informed about the relevant facts before entering into the Settlement. Derivative Plaintiffs' counsel's knowledge of the merits of the Derivative Litigation reached a stage where an intelligent evaluation of the Derivative Litigation and the propriety and fairness of the Settlement could be made.
> Before and after complaints were filed in each of the actions comprising the Derivative Litigation, Derivative Plaintiffs' counsel conducted extensive research and investigation into the Individual Defendants' alleged misconduct and the corresponding alleged damages to the Company. This investigation included, inter alia, review and analysis of: (1) regulatory filings made by IGC with the SEC; (2) press releases and media reports issued by and disseminated by the Company; (3) analyst reports concerning IGC; (4) the complaints filed in the consolidated securities class action pending in the United Stated District Court for the District of Maryland captioned, *Tchatchou v. India Globalization Capital Inc.*, 8:18 Civ. 3396-PWG; and (5) other publicly-available information regarding the Company.

(ECF No. 34-1, ¶¶ 43, 44).  The second new circumstance is the lack of any objections to the settlement, which other courts have found "may well evidence the fairness of the Settlement."  *In re Fab Universal*, 148 F. Supp. at 282.

5

B.    Adequacy

In determining the adequacy of the proposed Settlement, the Court must weigh the following factors: (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. *Montgomery*, 83 F.R.D. at 316.

Again, the court provided detailed analysis of these factors in its prior opinion.  It remains the case that "[w]ithout the benefit of a motion to dismiss – or even an answer to Plaintiffs' complaints – the court is left to analyze the first three factors based on the complaints alone." *In re India Globalization Capital*, No. DKC 18-3698, 2020 WL 2097641, at *4. As noted in *Fab Universal*, a final approval decision, "[t]he doctrine of demand futility, the business judgment rule, and the generally uncertain prospect of establishing a breach of fiduciary duties combine to make shareholder derivative suits an infamously uphill battle for plaintiffs."  *Fab Universal*, 148 F.Supp.3d at 281-82.   Each of these doctrines is relevant to this case and each would have been a significant hurdle for Plaintiffs.   As Mr. Brown notes, Plaintiffs Erny and Hamdan both would have faced a demand futility

inquiry.  (ECF No. 34-1, ¶ 52).  "Plaintiff Patel also faced a considerable hurdle, as the burden on a plaintiff in demonstrating wrongful refusal of a demand is similarly very high, because such a plaintiff would have to overcome the business judgment rule." (*Id.*).  These hurdles speak to each of the first three factors and generally caution in favor of approving a settlement.

Mr. Brown also points out a specific potential difficulty of proof, noting that, "witnesses could suddenly become unavailable or the fact-finder could react to the evidence in unforeseen ways[.]" (*Id.*, at ¶ 57).  While this is technically true with regard to *any* trial, there is at least the possibility of a heightened difficulty in procuring witnesses here, as "some of the witnesses may reside in India or China." (*Id.*).  Additionally, Mr. Brown attests that "the complexity, expense, and likely duration of the Derivative Litigation are factors that support the Settlement." (*Id.*, ¶ 60).

Finally, and perhaps most importantly, this settlement remains unopposed.  "The complete lack of shareholder objection to this settlement weighs in favor of approval." *In re Fab Universal*, 148 F. Supp. at 282.

### III. The Fee and Service Awards

Pursuant to the Settlement, Plaintiffs seek an award of $200,000.00, of which $197,000.00 is to constitute a fee award for Plaintiffs' counsel, and $3,000.00 is to make up three individual

7

service awards of $1,000.00 to each of Plaintiffs Erny, Hamdan, and Patel. (ECF No. 34-3, at 2). Plaintiffs did not seek or gain preliminary approval of these aspects of the Settlement. This award is to be paid by Defendants' insurers, (ECF No. 34-3, at 8), and, as explained at the hearing and stated in a post-hearing memorandum, neither Defendants individually nor the company will be affected by the payment. Indeed, any reduction in the amount sought would not benefit the company. (ECF No. 39, at 2-3).

Plaintiffs' counsel claim they are entitled to these awards based on the "substantial benefit doctrine" or, alternately, via application of the factors laid out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (the "Johnson Factors"). The United States Court of Appeals for the Fourth Circuit does not generally apply the "substantial benefit doctrine" in assessing awards of attorney's fees, but rather favors analysis of the Johnson Factors. Likewise, in cases similar to this one, where there is no monetary benefit in a settlement agreement, but rather only corporate governance reforms, district courts have not utilized the substantial benefit doctrine. *See, e.g.*, *In re Star Sci., Inc.*, No. 1:13CV0550 (AJT/JFA), 2016 WL 4820637, at *4 (E.D. Va. Aug. 3, 2016) (finding the "substantial benefit" doctrine or the "common benefit" doctrine inapplicable to case where settlement only included corporate governance reforms).

This court will follow the Fourth Circuit's guidance. Under the Fourth Circuit's approach:

> First, the court must "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the [the *Johnson* Factors]. *Id*. at 243-44. Next, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Id*. at 244. Finally, the court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id*.

*McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), as amended (Jan. 23, 2014). The Johnson Factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions presented by the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee for like work; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) attorneys' fees awards in similar cases. *In re Mid-Atl. Toyota*, 605 F. Supp. at 445 (citing

*Allen v. Burke*, 690 F.2d 376, 379 (4th Cir. 1982)).  In applying the above factors:

> the Fourth Circuit has noted that "the district court is not required to engage in a lengthy discussion concerning what portion of the award is attributable to which [Johnson] factor ... [for], as the United States Supreme Court noted in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), many of the Johnson factors 'are subsumed within the initial calculation of hours reasonably expended at reasonable hourly rate and need not be further considered at all.'" *Arnold v. Burger King Corp.*, 719 F.2d 63, 67 n. 4 (4th Cir. 1983).

*In re Mid-Atl. Toyota*, 605 F. Supp. at 446.

The application of these factors requires varying levels of analysis depending on the circumstances.  Certain cases do "not raise the kind of concerns that might call for an especially robust or detailed explanation of a fee award by a district court." *Berry v. Schulman*, 807 F.3d 600, 618 (4th Cir. 2015).  For a number of reasons, this is just such a case.

First, the parties have engaged in arms-length negotiations over the fee awards. (ECF No. 34-1, ¶ 11).  Plaintiffs have cited persuasively to out-of-district authority which supports the common-sense principle that unopposed, negotiated fee awards should be more readily approved.  *See*, *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) ("substantial weight" should be given to fee awards negotiated at arms'-length); *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *25 (S.D.N.Y. Mar.

24, 2014) ("That the Attorneys' Fee Payment was later separately negotiated weighs in favor of its reasonableness."); *In re Bear Stearns Companies, Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (fact that requested fee was the product of negotiations supports approval); *In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *18 (D.N.J. Mar. 26, 2010) (negotiation of requested fee before a respected mediator weights in favor of approval).

Second, there have been no objections to the fee awards, (ECF No. 34-1, ¶ 34), and third, there is otherwise "no reason to worry . . . that the lawyers might [have] urge[d] a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees[,]" *Berry*, 807 F.3d at 618 (internal quotations and citations omitted). As to this last point, the considerable difficulties – discussed above – which Plaintiffs would have faced in litigating this matter to a money judgment, coupled with the significant suite of corporate governance reforms won through settlement (and detailed in the court's previous opinion), weigh in favor of accepting the fee award as reasonable.

What is more, Plaintiffs' counsel have not received "red-carpet treatment on fees," as far as the court can tell. Plaintiffs' counsel is seeking payment for 616.60 hours of work, an amount which, if multiplied by their stated hourly rates, would

11

come out to $392,675.75. In other words, Plaintiffs' counsel seeks a "fractional" lodestar amount, as opposed to the kind of multiplied lodestar amount typically awarded in this district. *See*, *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee); *Goldenberg v. Marriott PLP Corp.*, 33 F.Supp.2d 434, 439 n.6 (D. Md. 1998) ("fee requested amounted to a lodestar enhancement of 3.6 — well within the average range of 3–4.5").

Plaintiffs' counsel have submitted affidavits detailing the nature and extent of services they have provided. Those affidavits satisfy the court as to a number of the Johnson factors. The affidavits, however, do not sufficiently substantiate "prevailing market rates" as the Fourth Circuit requires. *See generally*, *Grissom v. The Mills Corp.*, 549 F.3d 313 (4th Cir. 2008). Plaintiffs' counsel's supplemental brief, while useful in some respects, does not remedy the lack of "specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). Furthermore, neither the affidavits nor the supplemental brief allow the court "to assess with any accuracy the number of hours reasonably and effectively devoted to legal work," *In re Star Sci.*, No. 1:13CV0550 (AJT/JFA), 2016 WL 4820637, at *7, because Plaintiffs' counsel has failed to include detailed

12

timesheets. "When faced with excessively vague or inadequate task descriptions in fee claims, courts 'have reduced fee claims by percentages ranging from 20% to 90%.'" *Id*. (citing *Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*, 127 F. Supp. 3d 607, 621 (E.D. Va. 2015).

That said, no such reduction is warranted in this case. Here, the negotiated nature of the fee award, the outstanding result achieved for the Plaintiffs, and a number of other factors combine to render the $197,000.00 fee award reasonable. Among these counterbalancing factors are 1) the fact that Plaintiffs' counsel accepted this case on a contingency basis, *see Singleton*, 976 F.Supp.2d at 683 ("In determining the reasonableness of an attorneys' fee award, courts consider the relative risk involved in litigating the specific matter compared to the general risks incurred by attorneys taking on . . . actions on a contingency basis," and 2) "attorneys' fees awards in similar cases." Again, the award which Plaintiffs seek is relatively modest compared to similar cases. For example, even after significantly reducing the sought-after award, the court in *Star Sci.* still awarded $488,062.50 in attorneys' fees and $43,957.39 in litigation expenses for a derivative settlement which also resulted exclusively in corporate governance reforms. *In re Star Sci*. No. 1:13CV0550 (AJT/JFA), 2016 WL 4820637, at *8. *See also*, *Unite Nat'l Retirement Fund v. Watts*, 2005 U.S. Dist. LEXIS 26246 (D.N.J.

Oct. 27, 2005) (awarding $9.2 million fee based on "the great benefit conferred upon [the company] as a result of the new corporate governance principles provided for in the settlement agreement" that resolved four shareholder derivative actions); *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *4 (N.D. Cal. Jan. 20, 2009) (awarding $2 million in attorneys' fees for settlement of four shareholder derivative actions consisting of corporate governance reforms and no monetary contribution); *Wilfred v. Modany, et al.*, C.A. No. 13-cv-3110 (S.D.N.Y. April 6, 2016) (awarding $1.1 million fee in settlement of three shareholder derivative actions involving corporate governance enhancements and no monetary payment as per Stipulation and Agreement of Settlement); *In re Schering-Plough Corp. S'holders Derivative Litig.*, 2008 WL 185809, at *5 (D.N.J. Jan.14, 2008) ($9.5 million fee for the substantial benefits the corporate governance procedures provided to the company); *Bacas v. Way*, 2008 WL 746825, at *2 (S.D. Tex. Mar. 20, 2008) (approving fees of $3 million in shareholder derivative action where settlement agreement provides significant corporate governance reforms that directly addressed the allegations made in the complaint).

Finally, Plaintiffs sought-after service awards are also appropriate and reasonable. Incentive payments to class representatives have been awarded in Rule 23 class actions. See, e.g., *In re Tyson Foods, Inc.*, No. RDB-08-1982, 2010 WL 1924012,

at *4 (D. Md. May 11, 2010).  "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."  *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir.1998). To determine whether an incentive payment is warranted, a court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook, 142 F.3d at 1016.  In this case in particular, because the service award is to be paid out of the award of attorney's fees, it "need not be subject to intensive scrutiny, as the interests of the corporation, the public and the defendants are not directly affected."  *In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d 327, 344 (D.N.J. 2002) (awarding $25,000 incentive award for lead plaintiffs in derivative litigation).  Plaintiffs have gone to some time and expense to procure significant corporate governance reforms which will benefit all shareholders, not just themselves.  In light of this fact, and the reasonableness of the award, the court approves the $1,000 service awards to Plaintiffs Erny, Hamdan, and Patel.

## IV. Conclusion

For the foregoing reasons, the motion for final approval of derivative settlement, fee award, and service award filed by Plaintiffs will be granted. A separate order will follow.

                                            /s/
                               DEBORAH K. CHASANOW
                               United States District Judge